# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

JOHN S. ROSS,
    Plaintiff,

v.

FRANK REYNOLDS;
THOMAS PINYAN;
DANIEL HIGGINS;
WILLIAM SMITH;
JAMES COX;
IRENE CAMPBELL;
LAUREN DENSON;
MARK KAPANOWSKI;
JAMEL CAMPBELL;
MICHAEL TUROCZY;
LARRY MITCHELL;
JOSE BURGOS;
EMIL GRIFFIN;
AMY DARLING;
ROBERT ANCHAYA;
MARY DAVIS a/k/a MARY GOTAY;
BRADLEY W. JOHNSON;
JUSTIN BOTTS;
JOSHUA D. OESTREICH;
RUSSELL "BRICE" SEARCY; and
RYAN FRICK;
    Defendants.

CIVIL ACTION FILE

NO. _____

## COMPLAINT

Plaintiff John S. Ross, by and through counsel, and pursuant to the Court's

Order dated January 9, 2026, files this Complaint alleging as follows:

## I. NATURE OF THE ACTION

1.    This civil rights action arises from Defendants' failure to protect Plaintiff from a known risk of inmate violence at the Cherokee County Detention Center ("CCDC") on March 8, 2023, and their subsequent deliberate indifference to Plaintiff's serious medical needs, specifically a broken jaw requiring surgical repair.

2.    This action is a renewal of an action previously dismissed without prejudice and is refiled both within the time frame set forth by the Court and within the applicable statutory time limit.

3.    On March 8, 2023, after CCDC officers discovered contraband in Plaintiff's cell based on information Plaintiff had disclosed, Plaintiff's cellmate told the officers: "Once y'all leave out of here, we gonna handle this." The officers observed and heard known pre-fight indicators and took no action to protect Plaintiff. Two hours later, inmates attacked Plaintiff, rendering him unconscious, with a broken jaw in two places and, with a concussion.

4.    Following the attack, Plaintiff was treated at Northside Hospital Cherokee, where the attending physician spoke directly with an oral surgeon and arranged for Plaintiff to be transported the next morning, March 9, 2023, to Georgia Oral & Facial Reconstructive Surgery ("GOFRS") for follow-up care. The accompanying deputy was explicitly instructed to arrange transport for the necessary

follow-up care. Despite repeated requests by Plaintiff, Defendants failed to transport Plaintiff on March 9, 2023, and failed to transport him for several days thereafter.

5.      When Defendants finally transported Plaintiff to GOFRS on March 15, 2023, the surgeon determined that surgery was necessary. However, Sheriff Reynolds had a history of delayed payments with GOFRS for inmate care, resulting in GOFRS requiring a deposit to schedule the surgery. Sheriff Reynolds refused to pay the mandatory deposit required to schedule the surgery, Plaintiff did not receive surgery until April 5, 2023—nearly one month after his injury. By that time, his jaw had healed in a misaligned position, requiring the surgeon to re-break Plaintiff's jaw in order to treat the misalignment caused by the delay.

## II. PRE-SUIT DIFFICULTIES IDENTIFYING RESPONSIBLE PARTIES

6.      Prior to filing suit, Plaintiff's counsel attempted, through open records requests, to identify which officers were responsible for specific conduct related to this case.

7.      In response, Plaintiff's counsel received complete shift rosters listing all Cherokee County Sheriff's Office ("CCSO") employees on duty at CCDC during the relevant time, but no information regarding which individuals had what specific duties or responsibilities.

8. This made it practically impossible for Plaintiff to separate the Defendants by conduct and duties and to clearly specify which Defendant did which acts as described throughout the Complaint.

9. Plaintiff acknowledges certain factual limitations at this pre-discovery stage and anticipates that the specific roles and responsibilities of individual Defendants will be clarified through discovery.

## III. PARTIES, JURISDICTION & VENUE

10. Plaintiff John S. Ross is a citizen and resident of Georgia.

11. Defendant Frank Reynolds ("Reynolds") is the Sheriff of Cherokee County and a resident of Cherokee County. He is sued in his individual capacity only and is subject to the jurisdiction of this Court.

12. Defendant Thomas Pinyan ("Pinyan") is the Chief Deputy of CCSO and a resident of Cherokee County. He is sued in his individual capacity only and is subject to the jurisdiction of this Court.

13. Defendant Daniel Higgins ("Higgins") is a Major and Commander of Jail Operations at CCSO and the Jail Administrator. He is a resident of Cherokee County, sued in his individual capacity only, and is subject to the jurisdiction of this Court.

14.    Defendant William Smith ("Smith") is a Lieutenant Colonel and Commander of Headquarter Operations at CCSO. He is a resident of Bartow County, sued in his individual capacity only, and is subject to the jurisdiction of this Court.

15.    Defendant James Cox ("Cox") is a Captain, Assistant Jail Administrator, and Jail Operations Commander at CCSO. He is a resident of Cherokee County, sued in his individual capacity only, and is subject to the jurisdiction of this Court.

16.    Defendant Irene Campbell ("I. Campbell") is a Captain and Jail Operations Support Commander at CCSO. She is a resident of Cherokee County, sued in her individual capacity only, and is subject to the jurisdiction of this Court.

17.    Defendant Lauren Denson ("Denson") is a Lieutenant and Watch Commander at CCSO. She is a resident of Cherokee County, sued in her individual capacity only, and is subject to the jurisdiction of this Court.

18.    Defendant Mark Kapanowski ("Kapanowski") is a Sergeant at CCSO. He is a resident of Cherokee County, sued in his individual capacity only, and is subject to the jurisdiction of this Court.

19.    Defendant Jamel Campbell ("J. Campbell") is a Sergeant at CCSO. He is a resident of Cherokee County, sued in his individual capacity only, and is subject to the jurisdiction of this Court.

20. Defendant Michael Turoczy ("Turoczy") is a Sergeant of Housing Operations at CCDC. He is a resident of Cherokee County, sued in his individual capacity only, and is subject to the jurisdiction of this Court.

21. Defendant Larry Mitchell ("Mitchell") is a Corporal at CCSO. He is a resident of Fulton County, sued in his individual capacity only, and is subject to the jurisdiction of this Court.

22. Defendant Jose Burgos ("Burgos") is a Corporal at CCSO. He is a resident of Cherokee County, sued in his individual capacity only, and is subject to the jurisdiction of this Court.

23. Defendant Emil Griffin ("Griffin") is a Corporal at CCSO. He is a resident of Cherokee County, sued in his individual capacity only, and is subject to the jurisdiction of this Court.

24. Defendant Amy Darling ("Darling") is a Corporal at CCSO. She is a resident of Cherokee County, sued in her individual capacity only, and is subject to the jurisdiction of this Court.

25. Defendant Robert Anchaya ("Anchaya") is a Corporal at CCSO. He is a resident of Fulton County, sued in his individual capacity only, and is subject to the jurisdiction of this Court.

26.    Defendant Mary Davis a/k/a Mary Gotay ("Davis") is a Corporal at CCSO. She is a resident of Cobb County, sued in her individual capacity only, and is subject to the jurisdiction of this Court.

27.    Defendant Bradley W. Johnson ("Johnson") is a Corporal at CCSO. He is a resident of Cherokee County, sued in his individual capacity only, and is subject to the jurisdiction of this Court.

28.    Defendant Justin Botts ("Botts") is a Deputy Sheriff at CCSO. He is a resident of Cherokee County, sued in his individual capacity only, and is subject to the jurisdiction of this Court.

29.    Defendant Joshua D. Oestreich ("Oestreich") is a Deputy Sheriff at CCSO. He is a resident of Cherokee County, sued in his individual capacity only, and is subject to the jurisdiction of this Court.

30.    Defendant Russell "Brice" Searcy ("Searcy") is a Deputy Sheriff at CCSO. He is a resident of Bartow County, sued in his individual capacity only, and is subject to the jurisdiction of this Court.

31.    Defendant Ryan Frick ("Frick") is a Deputy Sheriff at CCSO. He is a resident of Bartow County, sued in his individual capacity only, and is subject to the jurisdiction of this Court.

32.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, as this civil action arises under the Constitution and laws of the United States.

33.    Venue is proper in this Court as one or more Defendants reside in this district.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Detention

34.    On or about December 16, 2022, Plaintiff was arrested on three misdemeanor charges and booked into CCDC, where he remained detained through April 2023.

### B. The March 7, 2023, Phone Call and March 8, 2023, Contraband Discovery

35.    On March 7, 2023, at approximately 8:58 p.m., Plaintiff disclosed in a recorded phone call to his mother that inmates in his cell possessed contraband, specifically a makeshift tattoo gun.

36.    On March 8, 2023, Defendants Botts and Mitchell were on duty monitoring Orange Pod 1 at CCDC, where Plaintiff was housed in cell 1-9.

37.    At approximately 4:30 p.m. on March 8, 2023, based on Plaintiff's disclosure from the previous evening, Corporal Mitchell directed Deputies Botts and Frick to conduct a search of cell 1-9.

38.    During the search, Deputy Frick recovered a makeshift tattoo gun from the belongings of inmate Evans.

39.    The contraband was confiscated, and Evans received a disciplinary write-up.

40.    Defendants revealed to the other inmates that Plaintiff disclosed the contraband.

## C. The Direct Threat and Pre-Fight Indicators

41.    After the search was completed, officers ordered inmates to return to cell 1-9.

42.    As inmates were returning to the cell, inmate Glaze told Defendant Botts in the presence of Defendants Mitchell and Frick: "Once y'all leave out of here, we gonna handle this."

43.    After the search, Defendants Botts, Mitchell, and Frick observed what they recognized as and believed to be pre-fight indicators around cell 1-9 of Orange Pod 1.

44.    Based on the direct threat communicated to them and the pre-fight indicators they observed, Defendants Botts, Mitchell, and Frick had actual knowledge that Plaintiff faced an excessive risk of imminent attack by his cellmates.

45.    Despite this actual knowledge of the serious and immediate threat to Plaintiff's safety, Defendants Botts, Mitchell, and Frick took no action whatsoever to protect Plaintiff or mitigate the risk. Specifically, they did not: place Plaintiff in protective custody; transfer Plaintiff to another cell or pod; remove the threatening inmates to a different location; warn the threatening inmates against attacking

Plaintiff; increase monitoring of the cell; or report the threat to other officers or supervisors.

46.     Defendants Botts, Mitchell, and Frick had approximately two hours between the time they acquired actual knowledge of the threat (at approximately 4:30 p.m.) and the time of the attack (at approximately 6:15 p.m.) during which they could have taken protective action but deliberately failed to do so.

47.     Defendants Botts, Mitchell, and Frick had the ability, authority, and duty under clearly established law to take reasonable measures to protect Plaintiff from the known risk of attack.

**D. The Attack on Plaintiff**

48.     At approximately 6:15 p.m. on March 8, 2023, Glaze, Evans, Plaintiff, and other inmates entered cell 1-9.

49.     Upon entering, Glaze locked the cell door.

50.     Glaze and Evans then attacked Plaintiff as they had threatened to do, knocking him unconscious and breaking his jaw in two places.

51.     Defendants Botts, Mitchell, and Oestreich observed suspicious activity, entered the cell together, and witnessed Plaintiff lying unconscious and bloody after the attack.

52.     Defendant Johnson also responded to the scene and witnessed Plaintiff's condition after the attack.

**E. Plaintiff's Emergency Medical Treatment at Northside Hospital Cherokee**

53.    Following the attack, Plaintiff was transported to Northside Hospital Cherokee for emergency medical evaluation and treatment.

54.    The transport log identifies Defendant Searcy as the "Primary Deputy" for the transport.

55.    The attending emergency physician, Dr. Allen, ordered a CT scan of Plaintiff's facial bones and head.

56.    The CT scan revealed that Plaintiff had suffered two fractures to his mandible (jaw): a minimally displaced oblique fracture through the right mandibular angle with extension through the third right mandibular molar, and a minimally displaced oblique fracture through the left anterior mandible with extension through the space between the lateral mandibular incisor and canine.

57.    Dr. Allen diagnosed Plaintiff with mandibular fractures (broken jaw in two places) and closed head injury with concussion.

58.    A broken jaw is a serious medical need.

59.    It is common knowledge that a broken jaw is a serious medical condition that requires medical attention and, if left untreated, poses a substantial risk of serious physical harm, including improper healing, chronic pain, difficulty eating and speaking, infection, and permanent disfigurement.

60.    At all relevant times, all Defendants subjectively knew that a broken jaw is a serious medical need and a serious medical condition that requires medical attention and, if left untreated, poses a substantial risk of serious physical harm, including improper healing, chronic pain, difficulty eating and speaking, infection, and permanent disfigurement.

**F. The Discharge Instructions and Arranged Follow-Up Appointment**

61.    While Plaintiff was still in the emergency department, Dr. Allen spoke directly with the on-call oral surgeon, Dr. Shahrokh Bagheri at Georgia Oral & Facial Reconstructive Surgery, and arranged for Plaintiff to be seen at Dr. Bagheri's Alpharetta clinic the following morning, March 9, 2023, at 9:00 a.m.

62.    Dr. Allen's discharge instructions explicitly stated: "I spoke with the on-call oral surgeon, Dr. Bagheri, who will see the patient in his Alpharetta clinic tomorrow morning at 9 AM for further evaluation and treatment planning. The accompanying Sheriff's deputy was informed of the need for close follow-up at the oral surgery clinic in the morning, and he will make the arrangements with the detention facility to schedule transport."

63.    The Sheriff's deputy (believed to be Defendant Searcy) who accompanied Plaintiff to the hospital on March 8, 2023, was directly informed by Dr. Allen of the need for Plaintiff to attend the 9:00 a.m. appointment at GOFRS on March 9, 2023, and was instructed to arrange transport with CCDC.

64.     Plaintiff was discharged from Northside Hospital Cherokee at 10:18 p.m. on March 8, 2023, and returned to CCDC that evening with explicit written discharge instructions requiring follow-up at GOFRS the next morning.

**G. Failure to Transport Plaintiff on March 9, 2023**

65.     On the morning of March 9, 2023, Plaintiff requested to be transported to his scheduled 9:00 a.m. appointment at GOFRS as the physician had instructed and arranged.

66.     Plaintiff repeatedly requested to be transported to GOFRS on March 9, 2023.

67.     Defendants denied Plaintiff's requests and did not transport him to GOFRS on March 9, 2023.

68.     On March 9, 2023, the following officers were on duty at CCDC and, by virtue of their positions and personal involvement in responding to or monitoring Plaintiff after the March 8 attack, knew that: (a) Plaintiff had suffered a broken jaw in two places the day before; (b) Plaintiff had been to the hospital and required "close follow up" relating to his broken jaw; (c) Dr. Allen set an appointment at 9:00 a.m. the next morning with an oral surgeon based on the severity of Plaintiff's injuries and the need for close follow up; (d) the accompanying deputy had been informed and instructed to arrange transport; and (e) Plaintiff was requesting transport to the appointment: Defendants Mitchell, Johnson, Botts, Oestreich, Searcy, and Frick.

69.   Defendants Botts, Mitchell, Oestreich, and Johnson had directly witnessed Plaintiff unconscious and severely injured after the attack on March 8, 2023, and were present when Plaintiff was transported to and returned from the hospital.

70.   Defendant Frick had been present during the contraband search, heard the threat against Plaintiff, observed the pre-fight indicators, and knew that Plaintiff had been attacked and hospitalized.

71.   Defendant Searcy was on duty on March 9, 2023, and knew and reasonably should have known of Plaintiff's attack, hospitalization, and discharge instructions through standard shift briefings, incident reports, and the deputy who accompanied Plaintiff to the hospital.

72.   Each of these officers who was on duty on March 9, 2023—Defendants Mitchell, Johnson, Botts, Oestreich, Searcy, and Frick—failed to transport Plaintiff to GOFRS and failed to take reasonable steps to arrange for Plaintiff's transportation or to procure medical treatment for Plaintiff's serious medical need.

73.   Under CCSO Standard Operating Procedure ("SOP") #09-08-01(B)(4), all CCSO employees are required to conform to provisions requiring officers to procure dental treatments, emergency dental care, and other care for serious medical conditions for CCDC inmates. Defendants Mitchell, Johnson, Botts, Oestreich, Searcy, and Frick violated this ministerial duty on March 9, 2023.

**H. Supervisory Knowledge and Failure to Intervene on March 9, 2023**

74.    The following supervisory personnel were on duty on March 9, 2023, and knew of Plaintiff's attack, his broken jaw in two places, the physician's explicit instructions for a 9:00 a.m. follow-up appointment, the deputy's notification to arrange transport, and the failure to transport Plaintiff: Defendants Turoczy (Sergeant of Housing Operations overseeing Mitchell and Botts), J. Campbell (Sergeant of Shift 2 overseeing Oestreich and Searcy), Davis (Corporal on Shift 2), Anchaya (Corporal on Shift 2), Denson (Lieutenant and Watch Commander overseeing Frick), Kapanowski (Sergeant overseeing Frick), and Burgos, Griffin, and Darling (Corporals overseeing Frick or other Shift 1 personnel).

75.    These supervisory Defendants, in their respective supervisory roles overseeing the officers on duty on March 9, 2023, had the duty to monitor the health and safety needs of inmates, including inmates who had been victims of violence and required urgent medical follow-up care.

76.    Despite their knowledge of the circumstances, these supervisory Defendants—Turoczy, J. Campbell, Davis, Anchaya, Denson, Kapanowski, Burgos, Griffin, and Darling—failed to take corrective action to ensure Plaintiff was transported to GOFRS on March 9, 2023, or to ensure that medical treatment was otherwise procured for Plaintiff's serious medical need.

77.    Despite the clear instructions from the medical providers that Plaintiff must have treatment the following morning, the Defendants denied Plaintiff the necessary treatment that morning and, instead, transferred him to a medical unit at the detention center to sit in a cell for 23 hours a day waiting to get treatment for his broken jaw.

78.    Plaintiff experienced pain around the clock every day on a liquid diet while waiting for Defendants to arrange for the necessary medical treatment.

79.    Plaintiff requested and pleaded for treatment every day, while in the medical unit cell 23 hours a day.

80.    Defendants Mitchell, Johnson, Botts, Oestreich, Searcy, and Frick's duties included supervision, monitoring, transport, and control of inmates in the medical unit.

81.    Based on their duties in the medical unit, each of Defendants Mitchell, Johnson, Botts, Oestreich, Searcy, and Frick had actual knowledge that Plaintiff had been denied treatment on remained in the medical unit without receiving a consult from an oral surgeon.

82.    Defendants refused Plaintiff treatment every day and responded to Plaintiff's pleas throughout his stay in the medical unit with statements such as "this isn't a hospital," "that's not my problem", and "there's nothing we can do."

83.    Plaintiff remained in the medical unit and finally was allowed to attend a consultation at the offices of GOFRS on March 15, 2023.

## I. Delayed Transport to GOFRS and Surgical Evaluation

84.    On March 15, 2023—six days after Plaintiff's scheduled follow-up appointment—CCSO finally transported Plaintiff to GOFRS.

85.    Medical staff at GOFRS evaluated Plaintiff and determined that he required surgical repair of his mandibular fractures.

## J. Refusal to Pay for Plaintiff's Required Surgery

86.    GOFRS, however, would not schedule Plaintiff's needed surgery because Defendant Reynolds had a custom and practice of refusing and causing unreasonable delays in payment for medical treatment, even treatment that medical providers deemed necessary.

87.    On March 16, 2023, the GOFRS office manager Daniela Cisneros sent an email with the subject matter "John Ross" to Tabitha Jenkins, who worked for CorrectHealth and was stationed at the Cherokee County Detention Center ("CCDC"), stating:

> *Per Dr. Bagheri we need a deposit of minimum half of what the cost of the surgery is in order to schedule. Since it is taking a long time to even receive payments from the previous cases that he already did.*

Email of 3/16/23 from D. Cisneros to T. Jenkins (italics added).

-17-

88.    It was clear that, due to a custom, practice and policy of Defendant Reynolds (and CorrectHealth on behalf of Defendant Sheriff Reynolds) of failing to pay for medical treatment, Plaintiff would be denied the necessary surgery until payment was made by Defendant Reynolds.

89.    Defendant Reynolds refused to pay, which delayed Plaintiff's medically necessary surgery, causing further pain and injury to Plaintiff as he continued to languish in a medical unit cell 23 hours per day.

90.    Had payment been timely made, Plaintiff would have suffered less, had the surgery sooner, and been discharged from the medical unit earlier.

91.    As Sheriff of Cherokee County, Defendant Reynolds was the final decision maker for CCSO and CCDC and had a non-delegable duty to ensure inmates received constitutionally adequate medical care, including authorizing and arranging payment for necessary medical treatment.

92.    Alternatively, one or more of the following Defendants, by virtue of their high-level supervisory positions at CCSO, had the duty and authority to ensure payment for Plaintiff's medically necessary treatment: Defendants Pinyan (Chief Deputy), Higgins (Major, Commander of Jail Operations, and Jail Administrator), Smith (Lt. Colonel and Commander of Headquarter Operations), Cox (Captain, Assistant Jail Administrator, and Jail Operations Commander), and I. Campbell (Captain and Jail Operations Support Commander).

93. By March 23, 2023—fifteen days after Plaintiff's attack—no payment had been made and no surgery had been scheduled.

94. On that date, Plaintiff was forced to file a Motion for Medical Intervention through counsel to compel Defendant Reynolds to fulfill his obligations to arrange and pay for Plaintiff's necessary surgery.

95. Defendant Reynolds (or alternatively, one or more of the supervisory Defendants) knew of Plaintiff's serious medical need, knew that surgery was required, knew that payment was necessary to schedule the surgery, and knew that Plaintiff was suffering daily as his jaw healed improperly.

96. Defendant Reynolds (or alternatively, one or more of the supervisory Defendants) knew of Plaintiff's serious medical need, knew that surgery was required, knew that payment was necessary to schedule the surgery and knew that payment had not been made.

97. Despite this knowledge, Defendant Reynolds and the responsible supervisory Defendants failed to authorize payment for weeks.

98. On March 31, 2023—twenty-three days after the attack—Defendant Reynolds finally authorized payment of $7,582.50 to GOFRS.

99. Plaintiff's surgery was scheduled for and performed on April 5, 2023, nearly one month after his initial injury and the physician's instruction for prompt treatment.

100. During the April 5, 2023, surgery, Plaintiff's jaw had to be re-broken and reset, because the Defendants had delayed payment and treatment, which had caused Plaintiff's jaw to begin to heal incorrectly.

101. Due to the failure to treat and pay for treatment, Plaintiff was confined to the medical unit for 23 hours per day for almost a full month – from March 9 (the day after the attack) through April 5, 2023 (the date of surgery).

102. Defendant Reynolds has admitted the he has the non-delegable duty to provide medical care: "The Sheriff of Cherokee County, including deputies appointed by the Sheriff and employed by the Sheriff's Office, has a legal duty to provide medical care to inmates placed into his custody." See *1:25-CV-01974-AT*, United States District Court for the Northern District of Georgia, Doc. 28 at ℙ 28.

103. While admitting, in judicio, this non-delegable duty to provide medical care to Plaintiff and other inmates, the third-party complaint nevertheless demonstrates that Defendant Reynolds completely abdicated such duty (and everything remotely related to such duty) to CorrectHealth. See *1:25-CV-01974-AT*, United States District Court for the Northern District of Georgia, Doc. 28 at ℙℙ 68-76.

104. Sheriff Reynolds confidently concludes that any responsibility relating to Plaintiff's injury, the failure to transport Plaintiff for treatment, and failure to treat

Plaintiff was the sole responsibility of CorrectHealth – to the exclusion of any responsibility of the Sheriff. *Id*.

105.   Defendant Reynolds's complete abdication of his duty to provide healthcare was evident throughout Plaintiff's unconstitutional delay in treatment and resulting complications.

## K. Consequences of Defendants' Failures

106.   Because of the delay in treatment from March 9 through April 5, 2023, Plaintiff's broken jaw began healing in its broken, misaligned condition.

107.   As a result, when Dr. Bagheri performed surgery on April 5, 2023, he was required to re-break the fractures that had begun healing, extract a tooth, and perform other extra surgical measures to properly realign and repair Plaintiff's mandible.

108.   The surgical procedure was more complex, invasive, and traumatic than it would have been had Plaintiff received timely treatment as initially prescribed on March 9, 2023, or even within the first week after his injury.

109.   Throughout March 2023, from the date of the attack through the date of surgery, Plaintiff endured continuous pain and suffering that could have been prevented or substantially mitigated by timely medical intervention.

**L. Knowledge of Systemic Problems at CCDC**

110.   CCSO SOP #06-01-03(A) requires all CCSO employees to conform to the provisions of the CCSO SOP.

111.   CCSO SOP #09-08-01(B)(4) requires CCSO personnel to procure dental treatments and emergency dental care for CCDC inmates.

112.   Before March 9, 2023, CCDC had a custom or practice of failing to follow CCSO SOP policies regarding medical care for inmates, including: failing to procure dental treatments and emergency dental care when necessary; failing to transport inmates to outside medical appointments; failing to follow medical providers' instructions; and failing to timely pay for required medical treatment, resulting in delays or denials of care.

113.   The supervisory Defendants—Reynolds, Pinyan, Higgins, Smith, Cox, I. Campbell, Denson, Kapanowski, J. Campbell, Turoczy, Burgos, Griffin, Darling, Anchaya, and Davis—knew of CCDC's customs and practices of noncompliance with CCSO SOP policies that resulted in inmates being denied timely medical care for serious medical needs.

114.   Despite their knowledge of these unconstitutional customs and practices, the supervisory Defendants failed to take corrective action, failed to adequately train and supervise subordinate officers, and failed to implement or enforce policies to protect inmates' constitutional rights.

115.   The failures of lower-ranking officers to transport Plaintiff and of Sheriff Reynolds to timely pay for Plaintiff's surgery were consistent with and directly caused by these longstanding customs and practices of noncompliance at CCDC that the supervisory Defendants knew about but failed to correct.

## V. CAUSES OF ACTION

### COUNT ONE: Eighth Amendment Violation –
### Failure to Protect Against Defendant Mitchell

116.   Plaintiff brings this claim pursuant to 42 U.S.C. § 1983 against Defendant Mitchell in his individual capacity for violations of the Eighth and Fourteenth Amendments.

117.   At all relevant times, Defendant Mitchell acted under color of state law.

118.   Since at least 1994, it has been clearly established law that prison officials have a duty to protect prisoners from violence at the hands of other prisoners and must take reasonable measures to guarantee inmates' safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

119.   On March 8, 2023, at approximately 4:30 p.m., Defendant Mitchell directed the search of cell 1-9 that recovered contraband, and thereafter gained actual knowledge of an excessive risk of attack against Plaintiff when inmate Glaze directly threatened that inmates would "handle" Plaintiff once the officers left, and when Defendant Mitchell observed pre-fight indicators around cell 1-9.

120. For approximately two hours, Defendant Mitchell could have taken action to protect Plaintiff from excessive risk of attack, but he deliberately chose not to do so.

121. Defendant Mitchell's failure to take any protective action, despite his actual knowledge of the imminent threat and his ability and authority to act, constituted deliberate indifference to Plaintiff's safety in violation of the Eighth and Fourteenth Amendments.

122. As a direct and proximate result of Defendant Mitchell's deliberate indifference, Plaintiff was attacked and suffered serious injuries, including a broken jaw in two places and concussion.

**COUNT TWO: Eighth Amendment Violation**
**Failure to Protect Against Defendant Botts**

123. Plaintiff brings this claim pursuant to 42 U.S.C. § 1983 against Defendant Botts in his individual capacity for violations of the Eighth and Fourteenth Amendments.

124. At all relevant times, Defendant Botts acted under color of state law.

125. On March 8, 2023, at approximately 4:30 p.m., Defendant Botts participated in the search of cell 1-9 and thereafter gained actual knowledge of an excessive risk of attack against Plaintiff when inmate Glaze directly threatened Plaintiff in Defendant Botts's presence, and when Defendant Botts observed pre-fight indicators around cell 1-9.

126. For approximately two hours, Defendant Botts could have taken action to protect Plaintiff from excessive risk of attack, but he deliberately chose not to do so.

127. Defendant Botts's failure to take any protective action, despite his actual knowledge of the imminent threat and his ability and authority to act, constituted deliberate indifference to Plaintiff's safety in violation of the Eighth and Fourteenth Amendments.

128. As a direct and proximate result of Defendant Botts's deliberate indifference, Plaintiff was attacked and suffered serious injuries, including a broken jaw in two places and concussion.

### COUNT THREE: Eighth Amendment Violation
### Failure to Protect Against Defendant Frick

129. Plaintiff brings this claim pursuant to 42 U.S.C. § 1983 against Defendant Frick in his individual capacity for violations of the Eighth and Fourteenth Amendments.

130. At all relevant times, Defendant Frick acted under color of state law.

131. On March 8, 2023, at approximately 4:30 p.m., Defendant Frick conducted the search of cell 1-9 and recovered the contraband. Thereafter, Defendant Frick gained actual knowledge of an excessive risk of attack against Plaintiff when inmate Glaze directly threatened that inmates would "handle"

Plaintiff once the officers left, and when Defendant Frick observed pre-fight indicators around cell 1-9.

132. For approximately two hours, Defendant Frick could have taken action to protect Plaintiff from excessive risk of attack, but he deliberately chose not to do so.

133. Defendant Frick's failure to take any protective action—despite his actual knowledge of the imminent threat and his ability and authority to act—constituted deliberate indifference to Plaintiff's safety in violation of the Eighth and Fourteenth Amendments.

134. As a direct and proximate result of Defendant Frick's deliberate indifference, Plaintiff was attacked and suffered serious injuries, including a broken jaw in two places and concussion.

**COUNT FOUR: Eighth Amendment Violation**
**Deliberate Indifference to Serious Medical Needs Against Defendants**
**Mitchell, Johnson, Botts, Oestreich, Searcy, and Frick**

135. Plaintiff brings this claim pursuant to 42 U.S.C. § 1983 against Defendants Mitchell, Johnson, Botts, Oestreich, Searcy, and Frick in their individual capacities for violations of the Eighth and Fourteenth Amendments.

136. At all relevant times, these Defendants acted under color of state law.

137. On March 9, 2023, each of these Defendants was on duty at CCDC and that Plaintiff had suffered a broken jaw in two places the previous day, had been

treated at Northside Hospital Cherokee, and had been given explicit physician instructions to attend a follow-up appointment at GOFRS that morning at 9:00 a.m.

138.   Specifically: (a) Defendants Mitchell, Johnson, Botts, and Oestreich witnessed Plaintiff unconscious and injured immediately after the March 8 attack or were otherwise directly involved in the response and were present when Plaintiff was transported to and returned from the hospital; (b) Defendant Frick had been present during the contraband search, heard the threat against Plaintiff, observed the pre-fight indicators, and knew that Plaintiff had been attacked and hospitalized; and (c) Defendant Searcy was on duty on March 9, 2023, and knew of Plaintiff's attack, hospitalization, and discharge instructions through standard shift briefings, incident reports, and communications with the deputy who accompanied Plaintiff to the hospital.

139.   On March 9, 2023, Plaintiff repeatedly requested transport to his scheduled 9:00 a.m. medical appointment at GOFRS, informing officers of his broken jaw and the physician's explicit instructions.

140.   Each of these Defendants knew that Plaintiff had a serious medical need (a broken jaw in two places requiring follow-up surgical evaluation), that Plaintiff faced a substantial risk of serious harm if he did not receive the prescribed follow-up care, and that immediate action was required under the emergency physician's orders.

141. Despite this knowledge, none of these Defendants transported Plaintiff to GOFRS on March 9, 2023, arranged for his transportation, or otherwise procured medical treatment for his serious medical need.

142. These Defendants' failures to act were objectively unreasonable responses to Plaintiff's serious medical need and violated CCSO SOP #09-08-01(B)(4), which imposes a ministerial duty on CCSO personnel to procure dental treatments and emergency dental care for inmates.

143. Each of these Defendants' acts and omissions demonstrated deliberate indifference to Plaintiff's serious medical need in violation of the Eighth and Fourteenth Amendments.

144. As a direct and proximate result of these Defendants' deliberate indifference, Plaintiff did not receive timely medical treatment on March 9, 2023, causing his jaw to begin healing improperly, resulting in additional pain, suffering, and the ultimate need for the surgeon to mobilize the healing fractures during surgery on April 5, 2023.

**COUNT FIVE: Eighth Amendment Violation**
**Supervisory Liability for Failure to Intervene Against Defendants Turoczy, J. Campbell, Davis, Anchaya, Denson, Kapanowski, Burgos, Griffin, and Darling**

145. Plaintiff brings this claim pursuant to 42 U.S.C. § 1983 against Defendants Turoczy, J. Campbell, Davis, Anchaya, Denson, Kapanowski, Burgos,

Griffin, and Darling in their individual capacities for violations of the Eighth and Fourteenth Amendments.

146. At all relevant times, these Defendants acted under color of state law.

147. On March 9, 2023, and in the days that followed, each of these Defendants held supervisory positions at CCDC with responsibility for overseeing lower-ranking officers and monitoring the health and safety needs of inmates, including victims of inmate violence.

148. Specifically: Defendant Turoczy, as Sergeant of Housing Operations, oversaw Defendants Mitchell and Botts; Defendant J. Campbell, as Sergeant of Shift 2, oversaw Defendants Oestreich and Searcy; Defendant Davis, as Corporal of Shift 2, oversaw Defendants Oestreich and Searcy; Defendant Anchaya, as Corporal of Shift 2, oversaw Defendants Oestreich and Searcy; Defendant Denson, as Lieutenant and Watch Commander of Shift 1, oversaw Defendant Frick; Defendant Kapanowski, as Sergeant of Shift 1, oversaw Defendant Frick; and Defendants Burgos, Griffin, and Darling, as Corporals of Shift 1, oversaw Defendant Frick or other Shift 1 personnel.

149. Each of these supervisory Defendants knew on March 9, 2023, and in the days that followed, that the officers under their supervision had failed to transport Plaintiff to his scheduled 9:00 a.m. appointment at GOFRS as the physician had

explicitly instructed and had failed to procure medical treatment for Plaintiff's serious medical need.

150. Each of these supervisory Defendants knew that this failure violated Plaintiff's constitutional rights and CCSO SOP requirements.

151. Despite this knowledge, these supervisory Defendants failed to take any corrective action to ensure Plaintiff received the medical care he needed. They did not direct their subordinates to transport Plaintiff, did not arrange alternative transportation, did not escalate the issue to higher authorities, and did not otherwise intervene to protect Plaintiff's constitutional rights.

152. Each of these supervisory Defendants' failures to intervene and take corrective action constituted deliberate indifference to Plaintiff's serious medical need in violation of the Eighth and Fourteenth Amendments.

153. As a direct and proximate result of these supervisory Defendants' deliberate indifference, Plaintiff continued to be denied medical treatment for six days, his jaw continued to heal improperly, and he suffered ongoing pain and the ultimate need for the surgeon to mobilize the healing fractures during surgery.

## COUNT SIX: Eighth Amendment Violation
## Deliberate Indifference to Serious Medical Needs Through Failure to Pay for Treatment Against Defendant Reynolds

154.   Plaintiff brings this claim pursuant to 42 U.S.C. § 1983 against Defendant Reynolds in his individual capacity for violations of the Eighth and Fourteenth Amendments.

155.   At all relevant times, Defendant Reynolds acted under color of state law.

156.   As Sheriff of Cherokee County, Defendant Reynolds was the final decision-maker for CCSO and CCDC and was responsible for ensuring that inmates received constitutionally adequate medical care, including authorizing, ensuring, and arranging payment for necessary medical treatment.

157.   By March 15, 2023, when Plaintiff was transported to GOFRS, Defendant Reynolds knew that: Plaintiff had been attacked at CCDC and suffered a broken jaw in two places requiring surgery; GOFRS medical providers had evaluated Plaintiff and determined surgery was necessary; payment of a mandatory deposit of at least half of the estimated surgical cost was required to schedule the surgery; and Plaintiff was in pain and his condition was deteriorating as time passed.

158.   Despite this knowledge, Defendant Reynolds refused or otherwise failed to authorize payment of the mandatory deposit for weeks, preventing Plaintiff's surgery from being scheduled.

159. Defendant Reynolds knew that a broken jaw in two places is a serious medical condition creating a serious medical need and a substantial risk of serious harm if left untreated.

160. Defendant Reynolds knew that delaying surgical treatment would allow Plaintiff's jaw to heal improperly, causing additional harm and making treatment more difficult and traumatic.

161. Defendant Reynolds had the authority and responsibility to authorize payment for inmate medical care and knew that his failure to do so was preventing Plaintiff from receiving necessary surgical treatment.

162. Despite repeated demands from Plaintiff's family and counsel, including the filing of a Motion for Medical Intervention on March 23, 2023, Defendant Reynolds continued to refuse or otherwise delay payment until March 31, 2023.

163. Defendant Reynolds did not authorize payment of $7,582.50 until March 31, 2023—twenty-three days after the attack and twenty-two days after the physician's initial instruction for follow-up care on March 9, 2023.

164. Defendant Reynolds's failure to timely authorize payment for Plaintiff's medically necessary surgery, despite his knowledge of Plaintiff's serious medical need and his authority to remedy the situation, constituted deliberate

indifference to Plaintiff's serious medical needs in violation of the Eighth and Fourteenth Amendments.

165. As a direct and proximate result of Defendant Reynolds's deliberate indifference, Plaintiff's surgery was delayed until April 5, 2023; his jaw healed improperly in the interim; he endured weeks of unnecessary pain and suffering; and he suffered the additional trauma and complexity of having the surgeon mobilize the healing fractures during surgery.

## COUNT SEVEN: Eighth Amendment Violation
### Supervisory Liability Against Defendants Pinyan, Higgins, Smith, Cox, and I. Campbell

166. Plaintiff brings this claim in the alternative pursuant to 42 U.S.C. § 1983 against Defendants Pinyan, Higgins, Smith, Cox, and I. Campbell in their individual capacities for violations of the Eighth and Fourteenth Amendments.

167. At all relevant times, these Defendants acted under color of state law.

168. Each of these Defendants held a high-level supervisory position at CCSO with responsibility for jail operations, inmate welfare, and coordination of inmate medical care: Pinyan as Chief Deputy; Higgins as Major, Commander of Jail Operations, and Jail Administrator; Smith as Lt. Colonel and Commander of Headquarter Operations; Cox as Captain, Assistant Jail Administrator, and Jail Operations Commander; and I. Campbell as Captain and Jail Operations Support Commander.

169. By virtue of their positions, one or more of these supervisory Defendants had the duty and authority to authorize or arrange payment for inmates' medical treatment and to ensure that inmates with serious medical needs received timely care.

170. Each of these Defendants knew by mid-March 2023 that: Plaintiff had been attacked and suffered a broken jaw in two places; Plaintiff required surgical treatment; the medical provider required payment of at least half of the estimated cost to schedule surgery; and payment had not been made, causing Plaintiff's necessary surgery to be delayed.

171. Before March 9, 2023, these supervisory Defendants knew that CCDC had a custom or practice of noncompliance with CCSO SOP medical care requirements, including: failing to procure necessary medical treatment for inmates; failing to transport inmates to medical appointments; failing to follow medical providers' instructions; and failing to timely pay for required medical treatment.

172. These supervisory Defendants knew that CCDC's customs and practices resulted in inmates being denied constitutionally adequate medical care for serious medical needs.

173. Despite this knowledge, these supervisory Defendants failed to take corrective action to remedy these unconstitutional customs and practices, including failing to: implement or enforce policies ensuring compliance with medical care

requirements; adequately train and supervise subordinate officers; discipline officers who violated inmates' rights; or take other measures to protect inmates' constitutional rights.

174.    These supervisory Defendants' knowledge of CCDC's unconstitutional customs and practices, combined with their failure to take corrective action, constituted deliberate indifference to the substantial risk of serious harm facing inmates with serious medical needs, including Plaintiff.

175.    Additionally, one or more of these supervisory Defendants personally failed to authorize or arrange payment for Plaintiff's surgery in March 2023, despite having the authority to do so and knowing that the lack of payment was preventing Plaintiff from receiving necessary treatment for his serious medical need.

176.    Each of these supervisory Defendants' failures—both in allowing unconstitutional customs and practices to persist and in failing to ensure payment for Plaintiff's surgery—constituted deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth and Fourteenth Amendments.

177.    As a direct and proximate result of these supervisory Defendants' deliberate indifference, Plaintiff's surgery was delayed until April 5, 2023, his jaw healed improperly, he endured weeks of unnecessary pain and suffering, and he suffered the additional trauma and complexity of having the surgeon mobilize the healing fractures during surgery.

178.   The acts and omissions of these supervisory Defendants were the moving force behind the violations of Plaintiff's constitutional rights.

## VI. DAMAGES

179.   As a direct and proximate result of Defendants Botts, Mitchell, and Frick's deliberate indifference to the known threat against Plaintiff, Plaintiff was violently attacked on March 8, 2023, rendering him unconscious and causing him to suffer fractures to his mandible in two places and a concussion.

180.   The attack caused Plaintiff severe physical pain, fear, and trauma, which could have been prevented had these Defendants taken any reasonable protective measures during the two hours between the direct threat and the attack.

181.   As a direct and proximate result of Defendants Mitchell, Johnson, Botts, Oestreich, Searcy, and Frick's deliberate indifference in failing to transport Plaintiff to his scheduled 9:00 a.m. appointment at GOFRS on March 9, 2023, Plaintiff was denied timely follow-up care for his broken jaw as explicitly ordered by the emergency physician.

182.   During the period from March 9, 2023, through March 15, 2023—six days during which Plaintiff should have received surgical evaluation and treatment planning—Plaintiff endured continuous pain from his untreated jaw fractures, was unable to eat properly, suffered difficulty speaking, and experienced fear and anxiety about his condition worsening without medical attention.

183. As a direct and proximate result of the supervisory Defendants Turoczy, J. Campbell, Davis, Anchaya, Denson, Kapanowski, Burgos, Griffin, and Darling's deliberate indifference in failing to intervene and ensure Plaintiff received timely medical care, Plaintiff's suffering and delay in treatment continued from March 9 through March 15, 2023.

184. As a direct and proximate result of Defendant Reynolds's deliberate indifference in refusing or failing to authorize payment for Plaintiff's necessary surgery, Plaintiff's treatment was further delayed from March 15, 2023, through April 5, 2023, which was an additional three weeks during which his jaw fractures continued to heal improperly in their broken, misaligned position.

185. As a direct and proximate result of the supervisory Defendants Pinyan, Higgins, Smith, Cox, and I. Campbell's deliberate indifference in (a) failing to correct the unconstitutional customs and practices at CCDC and (b) failing to ensure payment for Plaintiff's surgery, Plaintiff's suffering continued and intensified throughout March 2023.

186. Throughout the 28-day period from March 8, 2023, through April 5, 2023, Plaintiff suffered continuous physical pain from his broken jaw, including sharp pain when attempting to eat, speak, or move his jaw; throbbing pain that interfered with his sleep; and increasing discomfort as his jaw healed improperly.

187.   Plaintiff suffered mental and emotional distress from knowing that his jaw was healing incorrectly and that each passing day without treatment was causing permanent damage that would make his eventual surgery more complex and painful.

188.   Because of the delay in surgical treatment, when Dr. Bagheri performed surgery on April 5, 2023, he was required to re-break Plaintiff's jaw fractures that had begun healing in their misaligned position, extract a tooth, and perform open reduction and internal fixation, which was a more invasive, complex, and traumatic procedure than would have been necessary had Plaintiff received timely treatment on or shortly after March 9, 2023.

189.   Plaintiff suffered additional physical pain, trauma, and prolonged recovery time as a result of the more complex surgical procedure necessitated by Defendants' delays in providing treatment.

190.   Plaintiff has suffered and continues to suffer physical pain and suffering from his injuries and the delayed treatment.

191.   Plaintiff has suffered and continues to suffer mental and emotional distress, including anxiety, fear, and psychological trauma from: being attacked by his cellmates after Defendants failed to protect him from a known threat; being denied medical care for a serious and painful injury despite repeated requests; and enduring nearly one month of unnecessary pain while his jaw healed improperly.

192.   Plaintiff suffered the indignity and humiliation of being unable to protect himself from attack despite officers having advance warning, and of having to beg for medical care that was his constitutional right.

193.   Plaintiff has incurred medical expenses for the treatment of his injuries, including emergency care at Northside Hospital Cherokee, surgical evaluation at GOFRS, surgical treatment on April 5, 2023, and ongoing or future medical care necessitated by his injuries and the delayed treatment.

194.   Plaintiff may require additional medical treatment in the future as a result of his injuries and the complications caused by delayed care, the costs of which are not yet fully known.

195.   All of Plaintiff's damages were directly and proximately caused by Defendants' deliberate indifference to Plaintiff's safety and serious medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

196.   Defendants' conduct was willful, wanton, malicious, and in reckless disregard of Plaintiff's constitutional rights, justifying an award of punitive damages to punish such conduct and deter similar violations in the future.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff John S. Ross respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendants on all counts;

B. Award Plaintiff compensatory damages in an amount to be determined by the evidence and the jury for all harm suffered as a result of Defendants' constitutional violations;

C. Award Plaintiff punitive damages against each Defendant in their individual capacity in an amount sufficient to punish their conduct and deter similar conduct in the future, as determined by the jury;

D. Award Plaintiff reasonable attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1988 and other applicable law;

E. Grant Plaintiff a trial by jury on all issues so triable; and

F. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 20th day of February, 2026.

**HALL & LAMPROS, LLP**

/s/ Andrew Lampros
Andrew Lampros
Ga. Bar #432328
Adam T. Mills
Ga. Bar #123930

300 Galleria Parkway SE
Suite 300
Atlanta, GA 30339
Tel.: (404) 876-8100
alampros@hallandlampros.com
adam@hallandlampros.com

*Attorneys for Plaintiff*